FORSCAN CORPORATION and Piero
Wolk, Appellants,

v.

DRESSER INDUSTRIES,
INC., Appellee.

No. C14–88–00948–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 26, 1990.
Rehearing Denied May 24, 1990.

David L. Moseley and Arnold Anderson Vickery, Houston, for appellants.

Rodney K. Caldwell, Charles R. Dunn, Chris C. Pappas, Houston, and Michael A. Hatchell, Tyler, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

Appellants appeal the granting of a permanent injunction to appellee in a trade secrets case involving a type of well-logging tool called a compensated density tool. The parties have previously been before this court on an appeal of a temporary injunction, *Dresser Industries, Inc. v. For-Scan Corp.*, 641 S.W.2d 311 (Tex.App.—Houston [14th Dist.] 1982, no writ), and on a mandamus, *ForScan Corp. v. Touchy*, 743 S.W.2d 722 (Tex.App.—Houston [14th Dist.] 1987, no writ). We affirm.

Dresser employed Piero Wolk as an engineer from 1967 to 1975 and as a consultant until July 1976. During his employment, Wolk signed agreements pledging not to disclose or use confidential information. In 1979 Wolk incorporated ForScan Corporation for the purpose of designing, developing, manufacturing and marketing nuclear well logging tools. One such tool, devel-

oped with the aid of Heinz Lichtenberg, also a former Dresser employee and consultant, was a compensated density tool. Dresser had previously developed such a tool, and when it learned of Wolk's product, it was concerned that its trade secrets were involved. Following an inspection, Dresser concluded that the tool did indeed incorporate technical information belonging to Dresser. In 1981 Dresser sued to enjoin ForScan and Wolk from making and selling the logging tool. ForScan and Wolk counterclaimed, alleging unfair competition, malicious prosecution and abuse of process. When the case finally went to trial in 1988, the trial court dismissed the counterclaims and granted the following injunction:

ORDERED, ADJUDGED AND DECREED that Defendants Forscan Corporation and Piero Wolk, their officers, agents, and employees, and those persons in active concert or participation with any of them who receive actual notice of this Judgment are permanently enjoined and restrained from using any of the components or disclosing any of the trade secrets of the components or the configuration of the compensated density well logging tools manufactured by Plaintiff Dresser Industries, Inc., and from making, having made, selling, offering for sale, supplying, or otherwise disposing of any product incorporating any of said components or configurations comprising Dresser's trade secrets.

In their first three points of error, appellants argue that the trial judge erred in allowing certain witnesses to testify because their identities and the substance of their testimony were not disclosed during discovery. The testimony at issue is that of Howard Lui, James Bradshaw and Bernard Hubner, current or former Dresser employees.

In 1986 appellants served Dresser with interrogatories that included the following:

INTERROGATORY NO. 24

Identify all potential witnesses who have knowledge of the facts of this lawsuit that Plaintiff expects to call to testify at trial, and for each such witness, provide a written summary of the facts

about which such witness is expected to testify at trial.

## INTERROGATORY NO. 33

Does Plaintiff still contend that Forscan Corp. and/or Piero Wolk misappropriated any alleged trade secrets or confidential information of Plaintiff, and if the answer to this interrogatory is other than an unequivocal negative, identify each and every thing that Plaintiff contends is a trade secret or an item of confidential information of Plaintiff that Plaintiff alleges has been misappropriated by Defendants Forscan Corp. and Piero Wolk.

Dresser responded to No. 24 with this statement:

Plaintiff objects to this interrogatory on the grounds that it seeks to obtain the work product and thought processes of Plaintiff's attorneys. Plaintiff further objects to providing Defendants with any written summaries of any facts which any potential witnesses are expected to testify to at trial on the grounds that such request is further calling for the work product of Plaintiff's counsel where such summaries exist and where no summaries exist Defendants' request is burdensome and oppressive in that it attempts to have Plaintiff prepare summaries for the sole convenience of Defendants.

Dresser responded to No. 33 with a list of seventeen items which were claimed to be misappropriated trade secrets and confidential information. Neither party took further action on the interrogatories until trial when appellants objected to the admission of the testimony.

■ Appellants contend that Dresser had a duty to supplement its responses to Nos. 24 and 33. They concede that Interrogatory No. 24 was improperly phrased in that it should have requested the identity of persons with knowledge of relevant facts rather than a witness list. However, they argue that Dresser had a duty to object to the form of the question so that it could be reurged in proper form or to request a ruling on the matter.

The parties briefed this case while the supreme court was considering *McKinney v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 772 S.W.2d 72 (Tex. 1989). It held that the party requesting discovery has the responsibility of obtaining a hearing on discovery matters. *Id.* at 75. *McKinney* based its ruling on a modification of Tex.R.Civ.P. 166b(4), which was effective January 1, 1988. Because the *McKinney* case was tried before that date, the court applied the old rule, which placed the burden of requesting a hearing on the party seeking to exclude matters from discovery. *Id.* This case was tried in May 1988 and therefore comes under the *McKinney* rule, which places the burden on appellants, rather than Dresser, of requesting a hearing. This result is somewhat more equitable since the cut-off date for discovery was April 1, 1988. At that point, the *McKinney* rule had been applicable for several months, and Dresser's objection to No. 24 was still pending. Appellants had the duty to either rephrase the interrogatory or to request a ruling on its propriety.

The testimony at issue concerned drawings of Dresser which were allegedly stolen. Appellants claim that these drawings were not listed in response to No. 33 as a trade secret or item of confidential information misappropriated by appellants. The seventeen listed items focused on the similarities between the ForScan and Dresser tools and on the speed with which Wolk developed his tool.

■ Appellants do not include the failure to list Hubner in their complaint about Interrogatory No. 33 but contend only that he was not identified in response to No. 24. Appellants' objection to Lui's testimony was also based on the failure to respond to No. 24. Thus, only Bradshaw's testimony is open to attack. That testimony, however, was objected to on grounds of failure to supplement No. 33 only after Bradshaw was off the stand, Dresser had rested, and appellants had presented their first witness. This was on the following day. At that time appellants moved to strike portions of his testimony. In order to be

considered on appeal, an objection to the admission of evidence must be made when the evidence is offered, not after it has been received. *Montes v. Lazzara Shipyard,* 657 S.W.2d 886, 889 (Tex.App.—Corpus Christi 1983, no writ); *Wolfe v. East Texas Seed Co.,* 583 S.W.2d 481, 482 (Tex. Civ.App.—Houston [1st Dist.] 1979, writ dism'd). The trial court did not err in admitting the testimony of Lui, Bradshaw and Hubner. Points of error one through three are overruled.

■ In points of error four through six, appellants complain of the trial court's action in striking the case from the jury docket. On January 26, 1982, appellants' then counsel sent a letter to the District Clerk enclosing "our firm check in the amount of $10.00 which represents the jury fee for the above-referenced cause." Prior to trial, Dresser was successful in having the case removed from the jury docket because appellants had not made proper application for a jury trial.

Effective January 1, 1988, TEX.R.CIV.P. 216 requires that a party file a written request for a jury trial with the clerk of the court. At the time the jury fee was paid in 1982, the rule required that "[n]o jury trial shall be had in any civil suit, unless application be made therefor...." TEX.R.CIV.P. 216 (Vernon 1976). Appellants argue that their cover letter of January 26, 1982, is an application as it served the purpose of putting the case on the jury docket. Dresser argues, however, that a separate request, application or demand for a jury apart from payment of a jury fee has always been a requirement of Texas practice. The cover letter does not suffice because nowhere does it request, apply for or demand a jury.

In *Sheth v. White,* this court held that a trial certification request form constituted an application for jury trial within the meaning of Rule 216. 722 S.W.2d 805, 805 (Tex.App.—Houston [14th Dist.] 1987, no writ). The court in *Walker v. Walker* noted, however, that a demand must be made and the fee paid and ruled that the simple deposit of a jury fee with the district clerk did not constitute a demand for a jury. 619 S.W.2d 196, 198 (Tex.Civ.App.—Tyler 1981, writ ref'd n.r.e.). The court further stated that "[a] litigant must take affirmative action to avoid a waiver of his right to jury trial." *Id.* at 197; *see also City of Houston v. Arney,* 680 S.W.2d 867, 873 (Tex. App.—Houston [1st Dist.] 1984, no writ). On the basis of *Walker* and *City of Houston,* the cover letter did not serve as an application for a jury trial. The trial court therefore did not err in striking the case from the jury docket.

Appellants further argue that the trial court compounded its error by forcing them to waive their right to a jury trial or suffer a mid-trial mistrial. Following the trial court's ruling on Dresser's motion, appellants filed a petition for leave to file a writ of mandamus in this court. The petition was denied and the parties proceeded to trial. Several days into the trial, however, this court reconsidered and indicated it would permit the mandamus action to be filed and would issue an order staying the trial. Given the substantial investment of time and money in the trial in progress, appellants decided to withdraw their petition. Dresser took the position that appellants were therefore waiving their assertion of error and should not be allowed to challenge the issue on appeal. The trial judge stated that he saw no other alternative than to declare a mistrial as the trial would be in limbo until the appeals court ruled on the mandamus and might have to start over again if that court ruled in appellants' favor. Appellants then decided to waive the jury. They now claim that this waiver was involuntary and invalid.

As the trial court was not in error in striking this case from the jury docket, appellants were not harmed by the trial court's action. In essence, they waived nothing.

Finally, appellants argue that even if there was a valid waiver of their right to trial by jury, this waiver does not apply to any retrial after remand by this court. As this case will not be remanded, it is not necessary that this point of error be addressed. Points of error four through six are overruled.

■ Appellants next argue that the trial court erred in striking their second amended counterclaim and in denying their motion for a trial amendment to add damage allegations that were tried by consent. Appellants contend that the counterclaim was filed within the time limitations of TEX.R. CIV.P. 63. However, the amendment was filed after the deadline for discovery and pleadings set by the trial judge pursuant to TEX.R.CIV.P. 166. Rule 166 takes precedence over Rule 63. *Casteel v. Gunning,* 402 S.W.2d 529, 540–42 (Tex.Civ.App.—El Paso 1966, writ ref'd n.r.e.). Rule 63 requires that a party filing an amendment after such time as may be ordered by the court under Rule 166 must obtain leave of the court. Leave to file shall be granted unless there is a showing that the amendment will operate as a surprise to the opposing party.

Dresser points out that the second amended counterclaim added a party (Piero Wolk, individually), three new causes of action (breach of contract, tortious interference and breach of a duty of good faith and fair dealing) and four new categories of damages (loss of investment of time and money, consequential damages, costs of defending a "spurious" lawsuit and mental anguish). Furthermore, this counterclaim was filed over a month after the pleading deadline and just ten days before a trial that was to conclude six years of trial preparation. Appellants had ample opportunity to amend its counterclaim well before this late date, and its failure to do so could only operate as a surprise to Dresser. Therefore, the trial court did not abuse its discretion in striking the counterclaim.

Appellants claim that during his initial cross examination of Piero Wolk, counsel for Dresser established or "specifically adduced" that Wolk/ForScan had invested about $900,000 in developing the compensated density tool. Appellants argue that this was a damage allegation that was tried by consent. An examination of the record shows that Dresser's counsel was attempting to establish whether ForScan or another Wolk-affiliated company, National K Works, owned the tool as it appeared that National K Works had paid most of the development costs. In his response, Wolk volunteered that "of the close to $900,000 of development costs, ForScan has paid about one hundred ninety-four, $195,000 only." This evidence certainly does not support a trial amendment claiming $900,-000 in development costs on *ForScan's* behalf. Neither did Dresser's counsel specifically adduce the information as he was pursuing a different line of questioning. Again, the trial court did not abuse its discretion in refusing the trial amendment. Points of error seven and eight are overruled.

In points of error nine through thirteen, appellants argue that the trial court erred in excluding evidence that was critical to their case both as defendants and counter-plaintiffs. Appellants state that they "will not belabor this court with a prolix discussion of these points of error." They do not present arguments or authorities to show why the evidence should have been admitted. There is also no discussion of how they were harmed other than a general contention that the trial judge effectively prevented their presentation of evidence on the counterclaim. The trial court properly sustained objections to the evidence. Points of error nine through thirteen are overruled. See *Hale v. Ramsey,* 524 S.W.2d 436, 437–38 (Tex.Civ.App.—Austin 1975, no writ).

In point of error fourteen, appellants contend that the trial court erred in allowing testimony concerning the similarities between the mechanical linkage sections of the Dresser and ForScan tools. Appellants objected at trial that this was not one of the similarities identified in response to Interrogatory No. 33. Dresser argued, however, that the similarities in the tools, irrespective of whether they were trade secrets, were something for the fact finder to consider in determining whether the tool was pirated. The trial court agreed to consider the evidence on that basis. Appellants did not then object to their consideration on that basis.

■ Appellants argue that the Dresser linkage design had already been disclosed

in diagrams contained in published U.S. patents and thus was no longer a trade "secret." The fact that information may be acquired through lawful means does not excuse its acquisition through a breach of confidence. *K & G Oil Tool & Service Co. v. G & G Fishing Tool Service*, 158 Tex. 594, 314 S.W.2d 782, 788 (1958), citing *Smith v. Dravo Corp.*, 203 F.2d 369 (7th Cir.1953). As discussed in reference to points of error fifteen and sixteen, there was evidence before the trial court that information about the tool was obtained from confidential Dresser drawings. The evidence of similarities in the linkage was relevant for the purpose offered. Point of error fourteen is overruled.

 In points of error fifteen and sixteen, appellants complain of the sufficiency of the evidence to support the trial court's ruling. Because findings of fact and conclusions of law were neither requested nor filed in this case, the trial court's judgment implies that all necessary findings exist to support it. *Lemons v. EMW Mfg. Co.*, 747 S.W.2d 372, 373 (Tex.1988) (per curiam). The legal and factual sufficiency of the implied findings may be challenged on appeal, and the applicable standard of review is the same as applied in the review of jury findings or a trial court's findings of fact. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980).

 In a non-jury case, the trial judge is the finder of fact. It is his responsibility to weigh the evidence and judge the credibility of the witnesses. The trial judge may accept or reject the testimony of any witness in whole or in part, and while an appellate court may not have reached the same findings, it may not substitute its judgment for that of the trial court. *Glassman and Glassman v. Somoza*, 694 S.W.2d 174, 178 (Tex.App.—Houston [14th Dist.] 1985, no writ). In this case, many witnesses testified as to the degree of similarity between the Dresser and ForScan compensated density tools. In particular, Dresser's expert Marcel Mougne stated the similarities were so great that they could not be attributed to mere coincidence. Billy Wilson, a former Dresser employee, tes-

tified that certain components of ForScan's tool were identical to those used in the Dresser tool. Mr. Wilson also noted that "engineers are pretty independent when they start from scratch. They don't like to follow the scheme of the previous engineer, and I dare say that if I had been up to redesign this three-inch tool, I don't think that you would have found as many similarities in the new tool that I would have designed to our old tool as we find between these two tools that we talk about here now."

The trial court also had before it the evidence that Wolk hired several Dresser employees to "moonlight" on the development of the tool and, furthermore, that either he or Heinz Lichtenberg solicited confidential information from others. Howard Lui testified that Lichtenberg asked to meet him after work to discuss doing some consulting work and asked that he bring a set of drawings of the telemetry system on which Lui was working. James Bradshaw testified that while employed with Lichtenberg's company, he saw Dresser drawings relating to density tools on the premises. When the possibility arose that Dresser might request a search of the premises for Dresser equipment and drawings, he was asked to hide those drawings elsewhere. Taken as a whole and judged according to the applicable standards of review, there was sufficient evidence to support the trial court's holding. Points of error fifteen and sixteen are overruled.

Appellants argue in point of error seventeen that the trial court erred in allowing four attorneys for the plaintiff to participate in the trial of this case. They admit, however, that standing alone, this alleged error is probably not sufficiently prejudicial to justify reversal. Rule 9 of the Texas Rules of Civil Procedure states that "[n]ot more than two counsel on each side shall be heard on any question or on the trial, except in important cases, and upon special leave of the court." Dresser responds that while it was represented by several attorneys, the courtroom proceedings were generally under the direction of no more than two counsel, except in several

instances when circumstances required or the proceedings shifted from the expertise of one attorney to another.

The record indicates that one of Dresser's attorneys was absent for a period due to a death in the family. It was therefore necessary for another attorney to fill in for him. In another instance, a Dresser counsel was substituted to cross examine an expert witness because of his experience. Appellants' counsel and the court agreed to this in an effort to speed things along. As the court was confronted with this issue several times and allowed Dresser to proceed, in essence Dresser had special leave of the court. Point of error seventeen is overruled.

In point of error eighteen, appellants assert that the trial court erred in granting Dresser injunctive relief. They contend that commercial use of another's trade secrets is required in order to entitle a party to such relief and that there was no proof that ForScan or Wolk intended to or did make commercial use of the trade secrets. This point is very briefly discussed and is somewhat unclear. Wolk himself stated that in 1981 he was in the process of both testing his tool and attempting to market it. He had employed a marketing director who was conducting a marketing survey and contacting prospective customers. Clearly, this is evidence of intended commercial use, and the trial court did not err in granting the injunction. Point of error eighteen is overruled.

The judgment of the trial court is affirmed.