Charles E. **HUMPHREY**, Independent Executor of the Estate of Betty Jane Merrifield, Deceased, Appellant,

v.

**CAMELOT RETIREMENT COMMUNITY**, a Texas Limited Partnership, Appellee.

No. 13–93–057–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 29, 1994.

Michael R. Garatoni, Foster, Lewis & Langley, Roger D. Kirstein, Foster, Lewis, Langley, Gardner & Banack, Inc., San Antonio, for appellant.

Randell W. Friebele, Harlingen, for appellee.

Before GILBERTO HINOJOSA, FEDERICO G. HINOJOSA, Jr., and YAÑEZ, JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

This is a suit on an earnest-money contract. Charles E. Humphrey, Jr., Independent Executor of the Estate of Betty Jane Merrifield, sued Camelot Retirement Community, A Texas Limited Partnership, to recover $16,750 earnest money which Merrifield allegedly paid to Camelot for the purchase of a new home. After a bench trial, the court granted a rescission of the contract and awarded Humphrey $13,750. Camelot appeals by 15 points of error. We reform the judgment, and as reformed, we affirm.

Camelot Retirement Community rented apartments and sold apartment houses to retirees in Cameron and Hidalgo County, Texas. In 1988 and 1989, Betty Jane Merrifield came to Camelot inquiring about buying a garden home. On March 8, 1989, she and Camelot entered into an Earnest Money Contract in which she had agreed to buy a home from Camelot for $67,000 and to pay it $16,750 earnest money. Camelot began building the home on August 8, 1989 and finished it on December 20, 1989. However, Merrifield died before she and Camelot could close on the home. Article 6.2 of the Contract provided: "In the event of a default by Seller hereunder, Purchaser may, as Purchaser's sole remedy terminate this Contract by written notice delivered to Seller at or prior to the Closing, and receive back the earnest money deposit." By letter dated June 5, 1990, counsel representing Merrifield's estate informed Linda Finch[1] that Camelot had defaulted on the Contract and

---

1. Finch had served as Camelot's general partner.

demanded the return of the $16,750 earnest money. Camelot allegedly failed to timely deliver the title policy to Merrifield.

On June 27, 1990, Charles Humphrey filed suit against Camelot, alleging that it had defaulted on the Contract, and, therefore, had wrongly retained Merrifield's earnest money. He requested a rescission of the Contract and the return of the $16,750 earnest money. The trial court did not file findings of fact and conclusions of law in this case.

Camelot's points of error challenge the factual and legal sufficiency of the evidence. In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 458 (Tex.1985); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401–02 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); *Allied Fin. Co. v. Garza*, 626 S.W.2d 120, 125 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■ By points one and two, Camelot asserts that it had established an oral modification to the Contract as a matter of law or by the great weight and preponderance of the evidence. Article 8.2 of the Contract provided that it could not "be modified, or any of the terms hereof waived, except by an instrument in writing (referring specifically to this Contract) executed by the party against whom enforcement of the modification or waiver is sought." Camelot tried to show that Merrifield had agreed to orally modify the Contract with respect to the time of closing and the time which it was to provide a title commitment to her.

John Luther, Camelot's marketing director, testified that the week following the Contract's execution date (March 8, 1989), he had met with Merrifield to discuss modifications to the closing date and the date Camelot would have provided the title policy to her. His testimony showed that he and she had a verbal agreement to extend the closing deadline and to extend the time for providing the title commitment. He extended the deadline for about 150 days or until the house was completed. He indicated that Merrifield had lived up to that agreement and that she did not ask for the return of her earnest money. According to Luther, no one had asked for the return of the earnest money or for rescission of the contract after construction had started, and no one had alleged that Camelot had defaulted on the Contract for not closing or for not providing a title policy within the initial 30–day period.

Paul Montaine had taken part in building Merrifield's home. His testimony showed that Merrifield had known that he had started building the home after expiration of the Contract's 30–day period. She had contacted him regarding some of the things involving the home's construction. He said that she had not asked to rescind the Contract, nor had she advised him to stop construction because she was claiming a default of the Contract. She did not ask him for the return of the earnest money.

Humphrey's evidence showed that the parties did not extend the closing date in writing.

■■ The trier of fact has the duty to weigh the evidence, draw inferences from the facts, and choose between conflicting inferences. *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex.1973); *Hudson v. Winn*, 859 S.W.2d 504, 508 (Tex.App.—Houston [1st Dist.] 1993, writ denied). When acting as the trier of fact, the trial judge may accept or reject any witness's testimony in whole or in part. While an appellate court may not have reached the same findings, it may not substitute its judgment for the trial court's judgment. *Hudson*, 859 S.W.2d at 508; *Roberts Express, Inc. v. Express Transp., Inc.*, 842 S.W.2d 766, 770 (Tex.App.—Dallas 1992, no writ); *Forscan Corp. v. Dresser Indus., Inc.*, 789 S.W.2d 389, 394 (Tex.App.—Houston [14th Dist.] 1990, writ denied).

By granting a rescission of the Contract, the trial court made an implied finding that Camelot and Merrifield had not agreed to an oral modification. The trial judge, as the fact finder, had the right to reject the evidence relating to the alleged oral modifica-

tion. The trial judge could have believed that the parties had not modified the Contract either by written instrument or by oral declarations. The evidence supports the trial court's findings. We overrule points one and two.

By points three and four, Camelot challenges the legal and factual sufficiency of the evidence to support rescission of the Contract. Rescission is an equitable remedy that operates to set aside a contract that is legally valid but is marred by fraud, mistake, or for some other reason, the court must set it aside to avoid unjust enrichment. *Lowrey v. University of Texas Medical Branch*, 837 S.W.2d 171, 174 (Tex.App.—El Paso 1992, writ denied); *Country Cupboard, Inc. v. Texstar Corp.*, 570 S.W.2d 70, 73 (Tex.Civ.App.—Dallas 1978, writ ref'd n.r.e.). Rescission works to avoid the contract, return any consideration paid, and to return the parties to their respective positions as if no contract had ever existed. *Lowrey*, 837 S.W.2d at 174; *Carrow v. Bayliner Marine Corp.*, 781 S.W.2d 691, 696 (Tex.App.—Austin 1989, no writ).

A trial court can grant unilateral rescission of a contract if a party shows that a breach had occurred in a material part of the contract. *Costley v. State Farm Fire & Casualty Co.*, 894 S.W.2d 380 (Tex.App.—Amarillo 1994, writ denied); *Ennis v. Interstate Distribs., Inc.*, 598 S.W.2d 903, 906 (Tex.Civ.App.—Dallas 1980, no writ); *see also Allen v. Allen*, 751 S.W.2d 567, 575 (Tex.App.—Houston [14th Dist.] 1988, writ denied). A partial breach is sufficient to grant rescission if it goes to the essence of the contract. *Ennis*, 598 S.W.2d at 906; *Atkins v. Beasley*, 544 S.W.2d 505, 507 (Tex. Civ.App.—Waco 1976, no writ).

The decision whether to grant rescission lies within the trial court's sound discretion. *Schenck v. Ebby Halliday Real Estate, Inc.*, 803 S.W.2d 361, 366 (Tex.App.—Fort Worth 1990, no writ); *Ebberts v. Carpenter Prod. Co.*, 256 S.W.2d 601, 627 (Tex. Civ.App.—Beaumont 1953, writ ref'd n.r.e.). An appellate court may reverse a trial court for abuse of discretion only if, after searching the record, it clearly shows that the trial court's decision was arbitrary and unreasonable. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex.1987). We are required to view the evidence in the light most favorable to the trial court's action, and indulge in every presumption which would favor the trial court's action. *Adams v. Reagan*, 791 S.W.2d 284, 287 (Tex.App.—Fort Worth 1990, no writ); *Parks v. U.S. Home Corp.*, 652 S.W.2d 479, 485 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd.).

In this case, article 3.1 of the Contract required that within 30 days of the date Merrifield and Camelot had entered into the Contract, Camelot "shall cause to be furnished to Purchaser [Merrifield] a standard Commitment for Owner Policy of Title Insurance (the "Title Binder"), issued through the Title Company, describing the Property, listing Purchaser as the prospective named insured and showing as the policy amount the total purchase price for the property." The evidence showed that Camelot did not cause to be furnished to Merrifield, a Title Binder issued through the Title Company within 30 days from the date the parties had entered into the Contract. Due to its failure to comply with article 3.1, Camelot breached the Contract. Camelot's failure to provide Merrifield the Title Binder prevented her designation as beneficiary of the title insurance on the property upon which she had planned to build her new home. This is a breach that goes to the essence of the Contract.

We hold that the evidence is sufficient to support rescission. Viewing the evidence in the light most favorable to the trial court's action, we find that the trial court did not abuse its discretion when it granted Humphrey rescission of the Contract. We overrule points three and four.

By points seven through twelve, Camelot asserts that it had established its defenses of waiver, promissory estoppel, and ratification as a matter of law or by the great weight and preponderance of the evidence. Camelot argues that Merrifield had never asked to rescind the Contract and that she had intentionally relinquished or acted inconsistent with her right to claim a rescission or

a default of the Contract. Camelot argues that this conduct acted as a waiver of her right to rescind. or claim a default of the Contract.

Its estoppel argument is that Merrifield had orally modified and extended the terms of the Contract and that Camelot had relied upon her conduct by starting to build her home. Camelot argues that this conduct has estopped Merrifield from claiming rescission.

Concerning ratification, Camelot points out that Merrifield had agreed to extend the Contract and had honored this extension. She had not sought rescission, claimed that Camelot had defaulted on the Contract, nor asked for the return of her earnest money. Further, she had encouraged the building of her home, made changes to it, and she had shipped her furniture to the home. Due to this conduct, Camelot argues that Merrifield had ratified the alleged modifications to the Contract and cannot seek a rescission.

The trial court could have chosen to disbelieve all of the testimony concerning waiver, promissory estoppel, and ratification. *See Hudson,* 859 S.W.2d at 508; *Roberts Express,* 842 S.W.2d at 770; *Forscan Corp.,* 789 S.W.2d at 394. We hold that the evidence supports the trial court's findings on waiver, promissory estoppel, and ratification. We overrule points seven through twelve.

■ By point thirteen, Camelot asserts that the trial court improperly rendered judgment favorable to Merrifield because the amount of prejudgment interest is excessive as a matter of law. Camelot asserts that the trial court's prejudgment-interest award is excessive because the court used the wrong interest rate and the wrong date from which to calculate the prejudgment interest. Alternatively, it argues that the trial court improperly awarded Merrifield prejudgment interest because she did not properly plead for its recovery.

Article 5069–1.03 provides that:

When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable. Tex.Rev.Civ.Stat.Ann. art. 5069–1.03 (Vernon 1987). Humphrey's Original Petition included a pleading "that the Estate of Betty Jane Merrifield is entitled to a refund of all earnest money paid to Defendant by the said Betty Jane Merrifield with interest thereon at the legal rate."

The Texas Supreme Court stated in *Imperial Sugar Co. v. Torrans,*[2] that when damages are definitely determinable, interest is recoverable as a matter of right from the date of the injury or loss. *Torrans,* 604 S.W.2d at 74. In *Black Lake Pipe Line Co. v. Union Constr. Co.,*[3] the Texas Supreme Court said that a simple prayer for interest provides fair notice and supports an award of prejudgment interest if the plaintiff's right to prejudgment interest does not depend upon the resolution of any fact issues. *Black Lake Pipe Line Co.,* 538 S.W.2d at 96.

■ In the instant case, the evidence showed that the Demand Letter was received on June 8, 1990. Based upon the Demand Letter and the Contract, the principal sum owed is determined by reference to a fixed date; *i.e.,* the date Humphrey demanded the return of the earnest money in the Demand Letter. Once liability was established, no fact issue existed concerning prejudgment interest. We find that the pleading for "all earnest money . . . with interest thereon at the legal rate" is sufficient to support an award of prejudgment interest. *Republic Nat'l Bank v. Northwest Nat'l Bank,* 578 S.W.2d 109, 116 (Tex.1979) (on reh'g) (prejudgment interest recoverable as matter of right when ascertainable sum is determined to have been due and payable at date certain prior to judgment); *Black Lake Pipe Line Co.,* 538 S.W.2d at 96.

*Was the Amount of Prejudgment Interest Excessive?*

■ The judgment stated that it "shall bear interest at the rate of ten percent (10%)

---

**2.** 604 S.W.2d 73 (Tex.1980) (per curiam).

**3.** 538 S.W.2d 80 (Tex.1976), *overruled on other grounds, Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

from March 8, 1989[4] until paid." Article 5069–1.03 provides that when the parties have not agreed upon a specified interest rate, the courts shall apply a 6% interest rate per annum on all accounts and contracts. We reform the trial court's judgment to reflect a 6% prejudgment interest rate. Prejudgment interest will commence July 8, 1990, which is 30 days after Camelot first received notice that Humphrey was demanding the return of the earnest money. This interest rate shall apply until the judgment date, October 20, 1992. *See* TEX.REV.CIV. STAT.ANN. art. 5069–1.03 (Vernon 1987). We sustain point thirteen.

■ By point fourteen, Camelot challenges the factual sufficiency of the evidence to support the damages award to Humphrey. Alternatively, it argues that overwhelming evidence exists to support a higher award of damages to itself. The Contract showed that Merrifield had agreed to pay Camelot $67,000 for Unit 6212. After she had died, Camelot resold the property for $72,500. At trial, Camelot's counsel asked John Luther, its marketing director, if he could tell the court approximately what it cost Camelot to resell the property. His testimony showed that it had incurred $7,000 to $10,000 to resell it. The trial court ordered that Humphrey recover from Camelot $13,750. This amount equaled the $16,750 earnest money less a $3,000 offset to Camelot.

Based on the judgment, Camelot received a net return of $3,000 from the earnest money. This amount plus the $5,500 it received from the property sale ($72,500–$67,000) equals $8,500. This figure falls within the $7,000 to $10,000 range that Camelot allegedly incurred to resell the property. The $16,750 was established as a matter of law and was uncontroverted. The $3,000 offset reflected the trial court's implied finding of the amount needed to satisfy the expenses of reselling the property. Accordingly, the $13,750 award was well within the range of

evidence presented to the trial court. We overrule point fourteen.

■ By point fifteen, Camelot complains of the trial court's failure to file findings of fact and conclusions of law. The trial judge signed the judgment on October 20, 1992. On November 4, 1992, Camelot timely filed its Request for Findings of Fact and Conclusions of Law. Camelot timely filed its Notice of Past Due Findings of Fact and Conclusions of Law on November 30, 1992. However, the trial court did not file Findings of Fact and Conclusions of Law.

■ In *Cherne Indus., Inc. v. Magallanes*,[5] the Texas Supreme Court stated that the trial court's duty to file findings and conclusions is mandatory. The trial court's failure to respond when the requesting party has properly made all requests is presumed harmful unless the record before the appellate court affirmatively shows that the complaining party has suffered no injury. *Cherne*, 763 S.W.2d at 772.

In *Sheldon Pollack Corp. v. Pioneer Concrete Co.*,[6] the Dallas Court of Appeals stated that the test for determining whether a complaining party has suffered harm due to the court's failure to file findings is: "[W]hether the circumstances of the particular case would require an appellant to have to guess the reason or reasons that the trial judge has ruled against it. . . . The issue is whether there are disputed facts to be resolved." *Sheldon*, 765 S.W.2d at 845. In *Fraser v. Goldberg*,[7] the Beaumont Court of Appeals stated: "In factually complicated situations in which there are two or more possible grounds for recovery or defense, an undue burden would be placed upon an appellant. Having to try to guess the reason or reasons the trial judge ruled against him should not be required." *Fraser*, 552 S.W.2d at 594.

In the instant case, the trial court, after hearing the evidence, announced in open court that "[t]his is a rescission ruling. . . ." This ruling reveals the ground upon which

---

4.  Merrifield and Camelot executed the Contract on this date.

5.  763 S.W.2d 768 (Tex.1989).

6.  765 S.W.2d 843 (Tex.App.—Dallas 1989, writ denied).

7.  552 S.W.2d 592 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

the trial court based its judgment, and it allows us to review the alleged trial errors. We perceive no harm to Camelot due to the trial court's failure to file the Findings of Fact and Conclusions of Law. We overrule the point of error.

Due to our disposition of the above points, we need not address the remaining points of error. *See* TEX.R.APP.P. 90(a).

We REFORM the judgment to show that prejudgment interest shall accrue at 6% from July 8, 1989 to the date of the judgment. We AFFIRM the remainder of the judgment.