11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Melvin Barker, Individually and as Heir

to the Estate of Kirsten
Barker, Deceased 

Appellant

Vs.      
            No. 11-01-00270-CV
--  Appeal from Grayson County

Ronald Henry Roelke, Elroy G. Roelke, State

Farm Fire & Casualty Company, and State 

Farm Mutual Automobile
Insurance Company

Appellees

 

This
appeal involves an effort to set aside release agreements executed to settle
tort claims arising from a serious automobile accident.   A vehicle operated by Jackie Jay collided
with a vehicle operated by Ronald Henry Roelke on February 13, 1995, in
Sherman.  Jackie Jay=s children, Kirsten Barker and Ryan Jay, were
passengers in her vehicle at the time of the collision.   Jackie Jay and her two children were all
seriously injured as a result of the collision.  Kirsten died from the injuries she received in the accident.  

Appellant,
Melvin Barker, is Kirsten=s surviving father and Jackie Jay=s former husband.  He initiated
the underlying proceedings by filing suit against Ronald Roelke asserting
wrongful death and survival claims arising from Kirsten=s death. 
Appellant did not assert a wrongful death claim on behalf of Jackie Jay
in the action.   Ronald Jay, Ryan=s father and Jackie Jay=s husband at the time of the accident,
intervened in appellant=s suit against Ronald Roelke seeking damages resulting from the
injuries suffered by Ryan.   Appellant
and Ronald Jay subsequently added Elroy G. Roelke as a defendant to the action
for the purpose of asserting a negligent entrustment claim against him based on
the allegation that he was the owner of the vehicle operated by Ronald
Roelke.  Jackie Jay did not file suit
against either of the Roelkes within the two-year period following the accident
either for her own physical injuries or for damages arising from the death of
Kirsten and the severe injuries received by Ryan.








The
Roelkes were insured by two insurance policies issued by State Farm Mutual
Automobile Insurance Company, consisting of an automobile liability policy and
an excess (umbrella) policy.  The
automobile liability policy provided policy limits of $100,000 per claimant and
$300,000 per accident.  The excess
policy provided umbrella coverage of $1,000,000.  Appellant  forwarded a Stowers[1]
demand to the Roelkes=
attorney on January 27, 1997, seeking to settle his  claims for an amount within policy limits.   See American Physicians Insurance Exchange
v. Garcia, 876 S.W.2d 842 , 848-49 (Tex.1994)(outlining the elements of a Stowers
demand).  Ronald Jay also forwarded a Stowers
demand to the Roelkes=
attorney.  The Roelkes= attorney responded to appellant=s and Ronald Jay=s settlement demands immediately following
the two-year anniversary of the accident in a letter dated February 14,
1997.  The response letter stated as
follows:

I have
received each of your settlement demands in the above-referenced case, copies
of which I have attached (without exhibits) to this correspondence.  You have both demanded the $100,000.00 per
person policy limits under the applicable automobile liability policy and
$1,000,000.00 policy limits under the excess (umbrella) policy. 

 

On behalf
of my clients, Ronald Henry Roelke and Elroy Gene Roelke, and on behalf of
State Farm, I accept each of your $100,000.00 demands under the applicable automobile
liability policy.  In addition, I am
authorized to pay the full $1,000,000.00 policy limits under the applicable
excess (umbrella) insurance policy to all Plaintiffs, Intervenors and potential
claimants/Plaintiffs/Intervenors in full and final settlement of this lawsuit
and all potential claims arising out of the accident made the basis of this
lawsuit against Ronald Henry Roelke, Elroy Gene Roelke and State Farm.

 

Both of
you have demanded the policy limits under the excess (umbrella) insurance policy.  Accordingly, it will be necessary for you
[Melvin Barker and Ronald Jay] both to reach an agreement with regard to the
division of the policy limits under the excess (umbrella) insurance policy.  In addition, a Guardian Ad Litem must be
appointed to represent the interests of Ryan Jay.  Such Guardian Ad Litem must fully approve the terms of the
settlement and division of the policy limits of the excess (umbrella) insurance
policy.   Further, although it is our
position that the statute of limitations has run as to any claims she may have
against the Roelkes or State Farm with regard to the accident made the basis of
this lawsuit, Jackie Jay must also sign a full release and approve the
settlement as to her son, Ryan Jay.

 








I will need to know in
the next seven days if you both can come to an agreement with regard to the
division of the policy limits under the excess (umbrella) insurance policy of
$1,000,000.00.  Also, please give me a
call immediately to discuss the appointment of the Guardian Ad Litem and other
issues with regard to the settlement of this case.  Also, I want to stress again that the $1,200,000.00 which the
Roelkes, by and through State Farm, have agreed to tender in this case is
contingent upon a full release by all Intervenors, Plaintiffs and potential
claimants/Plaintiffs/Intervenors, including and not limited to Jackie Jay.  Independent of her potential individual
claim, Jackie Jay is also a necessary party to any settlement on behalf of Ryan
Jay, as she is Ryan=s natural
mother and legal guardian, and is also a necessary party to any settlement for
the estate of Kirsten Barker, as she is a statutory beneficiary of Kirsten
Barker.

Appellant and Ronald Jay each accepted the
respective offers of $100,000 in settlement under the automobile liability
policy.  They also  agreed to accept the offer of $1,000,000
under the excess insurance policy to collectively resolve their claims.  Appellant and Ronald Jay submitted the issue
of apportioning the $1,000,000 settlement proceeds to the trial court for
determination at a hearing which occurred on April 3, 1997.  The trial court ultimately apportioned
$400,000 of the $1,000,000 settlement proceeds to appellant in a letter dated
June 19, 1997.    Appellant therefore
received a total of $500,000.00 in settlement for the survival and wrongful
death claims that he asserted. 

Jackie Jay
testified at the apportionment hearing conducted on April 3, 1997.  Several of the questions which were directed
to her concerned her competency to forego pursuing her claims arising from the
accident.  She testified that she was
aware of her potential claims and that she agreed to the settlement which had
been reached by the Roelkes with appellant and Ronald Jay.   The trial court later entered an order
entitled AOrder for Determination of Competency@ on April 25, 1997, wherein the court
declared that AJackie Jay is competent in all respects to
enter agreements with regard to the settlement and resolution of this lawsuit.”








Appellant
executed two written settlement agreements releasing the Roelkes from claims
arising from the accident. Appellant executed the first release on March 28,
1997, upon receiving $100,000 paid under the automobile liability policy.  He executed the second release on July 2,
1997, upon receiving the $400,000 apportioned to him by the trial court on June
19, 1997, from the $1,000,000 tendered under the excess policy.   Both of the releases provided for appellant=s release of any and all claims arising from
the accident which he might have against the Roelkes and their insurer.  

On July 9,
1997, a plea in intervention was filed on behalf of Jackie Jay by Karen
Coleman.[2]  Jackie Jay=s original pleading only sought a recovery against the Roelkes for
her  personal injuries as well as for
her claims arising from Kirsten=s death and Ryan=s physical injuries.  The filing
of the intervention more than two years after the date of the accident was
premised on the allegation that Jackie Jay was not competent to act for herself
as a result of the injuries she sustained in the accident.       Jackie
Jay filed an amended pleading on or about September 19, 1997, which added a
claim against appellant concerning the $400,000 which the trial court
apportioned to him after the April 3, 1997, hearing.  Jackie Jay alleged that appellant breached a duty which he
purportedly owed to her as another wrongful death beneficiary by not including
her as a party to his action against the Roelkes.[3]  Jackie Jay=s pleading also sought to restrain appellant=s use of the $400,000 he received on July 2,
1997, during the pendency of the case.   


Jackie Jay
filed a subsequent pleading on May 24, 1999, which greatly expanded the scope
of the action.   This amended pleading
added several additional parties including: (1) appellant=s attorney and his law firm; (2) the Roelkes= attorney and their law firm; (3) State Farm
Mutual Automobile Insurance Company; (4) State Farm Fire & Casualty
Company; and (5) the executors of the estate James Michael Thompson, Deceased.[4]  Jackie Jay alleged that these parties were
aware of her lack of capacity and that they conspired to prevent her from
receiving any portion of the insurance proceeds which were paid to appellant
and Ronald Jay.  








Jackie Jay
ultimately reached a settlement with the Roelkes, their attorneys, and their
insurers  in  March of 2000.[5]   Jackie Jay received the sum of $5,500,000
under the terms of the settlement agreement in consideration for her release of
all of the claims she potentially possessed against the Roelkes, their
attorneys, and their insurers.  Jackie
Jay=s receipt of $5,500,000 under the terms of
the subsequent settlement is the impetus for this appeal.  Appellant amended his pleadings in March of
2000 to include claims seeking to rescind the written releases he executed in
1997 in favor of the Roelkes and their representatives.  He directed his initial claim for rescission
against only the Roelkes.  Appellant
later added State Farm Mutual Automobile Insurance Company and State Farm Fire
& Casualty Company as parties in April of 2000.    Appellant asserted that he was entitled to rescission based on
several grounds.  He also pursued claims
of conversion, breach of contract, fraud, and civil conspiracy against
appellees (the Roelkes, State Farm Mutual Automobile Insurance Company and
State Farm Fire & Casualty Company).

Appellees
filed traditional motions for summary judgment which urged that all of
appellant=s claims were barred by the releases he
executed.  The motions additionally
asserted that appellant was precluded from seeking to rescind the releases
under the theories of ratification and waiver. 
The trial court granted summary judgment for appellees on all claims
asserted against them by appellant. 
Appellant brings a single appellate issue complaining that the trial court
should not have granted summary judgment in favor of appellees.  He has briefed seven sub-issues outlining
his grounds for attacking the summary judgment.  We affirm.








The trial
court=s order granting summary judgment does not
specify the grounds upon which it is based.  
 When
a trial court=s order granting summary judgment does not
specify the ground or grounds relied upon for its ruling, summary judgment will
be affirmed on appeal if any of the summary judgment grounds advanced by the
movant are meritorious.  Dow Chemical
Company v. Francis, 46 S.W.3d 237, 242 (Tex.2001);  Carr v. Brasher, 776 S.W.2d 567, 569 (Tex.1989).  With respect to a motion for traditional
summary judgment, the question is whether the movant has met its burden of
showing that there are no genuine issues of material fact and that judgment
should be granted as a matter of law. 
Nixon v. Mr. Property Management Company, Inc., 690 S.W.2d 546
(Tex.1985). All evidence favorable to the non‑movant must be taken as
true, and all reasonable doubts must be resolved in favor of the non‑
movant.  Nixon v. Mr. Property
Management Company, Inc., supra.  In order for a defendant to be entitled to
summary judgment, it must either disprove an element of each cause of action or
establish an affirmative defense as a matter of law.  American Tobacco Company, Inc. v. Grinnell, 951 S.W.2d 420, 425
(Tex.1997); Science Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.1997).  

Appellant
asserts in Sub-issue No.1a that the summary judgment evidence raised a fact
issue with respect to appellees= affirmative defense of release. 
He contends that the two written releases which he executed are only
part of a A[g]lobal [s]ettlement@ which he entered with Jackie Jay,  Ronald Jay, the Roelkes, and the Roelkes= insurer.  
Appellant asserts that Jackie Jay agreed to release all of her potential
claims arising from the accident as part of the global settlement.   He further asserts that the releases are
unenforceable against him if Jackie Jay=s claims were not released at the same time.  Appellant relies on the contractual elements of mutual assent and
party capacity in advancing this argument.[6]   With respect to his mutual assent
allegation, appellant argues that the releases do not reflect a Ameeting of the minds@ because they do not include provisions
addressing Jackie Jay=s
simultaneous release of claims. 
Appellant additionally asserts that the issue concerning Jackie Jay=s capacity to agree to the global settlement
constitutes a fact question which precludes the enforcement of the releases by
summary judgment.

Jackie Jay=s status as a party to the releases which
appellant executed is a threshold issue to appellant=s claims of lack of mutual assent and
capacity.   We conclude as a matter of
law that Jackie Jay was not a party to the releases.  Appellant bases his allegation regarding Jackie Jay=s status as a party to the releases on the
portions of the Roelkes= attorney=s
letter of February 14, 1997, which discuss Jackie Jay=s consent to the proposed settlement.  Appellant=s contention is therefore based on an alleged agreement or
understanding which is not expressly set out in the releases.  Both of the releases contain a provision
which states as follows:








This document contains the entire agreement
between the Parties with regard to the settlement of Plaintiff=s claims against Defendants and there are no
other understandings or agreements, verbal or otherwise, among the Parties
except those expressly stated in this document.[7]  

 

This provision is
typically referred to as an integration or merger clause.  The parties= execution of a written agreement presumes that all prior negotiations
and agreements relating to the transaction have been merged into it and it will
be enforced as written and cannot be added to, varied, or contradicted by parol
evidence.  See Smith v. Smith, 794
S.W.2d 823, 827-28, (Tex.App. B Dallas 1990, no writ).  This
rule is particularly applicable where the written contract contains an
integration clause.  See Smith v. Smith,
supra.  The inclusion of the integration
clause in each of the releases prevents appellant from relying on extraneous
agreements or understandings to assert that Jackie Jay was a party to the
releases which he  executed. 

            Since
Jackie Jay was not a party to the releases, her possible lack of capacity could
not serve as an independent ground for invalidating the releases.  Morever, even if Jackie Jay were a party to
the releases, only she or her representative would have standing to assert that
the releases were voidable as a result of her lack of capacity.  See Swain v. Wiley College, 74 S.W.3d 143,
146 (Tex.App. B Texarkana 2002, no pet=n).  Appellant=s mutual assent argument is also
misplaced  given the fact that the
parties executed a written contract with the benefit of counsel.  When an unambiguous writing has been entered
into between the parties, the courts will give effect to the intention of the
parties as expressed or as is apparent in the writing.  City of Pinehurst v. Spooner Addition Water
Company, 432 S.W.2d 515, 518 (Tex.1968).  
In the usual case, the instrument alone will be deemed to express the
intention of the parties, for it is objective, not subjective, intent that
controls.  City of Pinehurst v. Spooner
Addition Water Company, supra.   In the
case of an express contract, the parties= mutual agreement is expressly stated in the contract.   Bank of El Paso v. T.O. Stanley Boot Co.,
Inc., 809 S.W.2d 279, 284 (Tex.App. ‑ El Paso 1991), aff'd in part,
rev'd in part on other grounds,  847
S.W.2d 218 (Tex.1992).  








Appellant
contends in Sub-issue No. 1b that the summary judgment evidence raised a fact
question with respect to his attempt to rescind the releases.  Rescission is an equitable remedy that
operates to set aside a contract that is legally valid but is marred by fraud
or mistake or, for some other reason, the court must set it aside to avoid
unjust enrichment.  See Humphrey v.
Camelot Retirement Community, 893 S.W.2d 55, 59 (Tex.App. B Corpus Christi 1994, no writ).  The decision whether to grant rescission
lies within the trial court=s sound discretion.  See Texas
Capital Securities, Inc. v. J.D. Sandefer, III, 58 S.W.3d 760, 774 (Tex.App. -
Houston [1st Dist.] 2001, pet=n den=d); Humphrey v. Camelot Retirement Community,
supra; Schenck v. Ebby Halliday Real Estate, Inc., 803 S.W.2d 361, 366
(Tex.App. B Fort Worth 1990, no writ).   The right to rescind a contract may be lost
by inaction and conduct showing an affirmation of the contract after a
knowledge of the facts which are grounds for rescission.  Guerrero v. Hagco Building Systems, Inc.,
733 S.W.2d 635, 638 (Tex.App. B San Antonio 1987, no writ); Payne v. Baldock, 287 S.W.2d 507, 509
(Tex.Civ.App. B 
Eastland 1956, writ ref=d n.r.e.).  

Appellant
is seeking to rescind the releases by asserting mutual mistake of fact and
fraud.  As a contract, a release is
subject to avoidance on these grounds. 
Williams v. Glash, 789 S.W.2d 261, 264 (Tex.1990).  Under the doctrine of mutual mistake, an
agreement may be avoided where the 
parties contracted under a misconception or mistake of a material
fact.  Williams v. Glash, supra at
264.  The elements of mutual mistake are:
(1) a mistake of fact; (2) held mutually by the parties; (3) which materially
affects the agreed-upon exchange. 
See  de Monet v. PERA, 877 S.W.2d
352, 357 (Tex.App. B
Dallas 1994, no writ)(citing RESTATEMENT (SECOND) OF CONTRACTS '152 (1981)). 
The party seeking to avoid the contract has the burden of proof to show
mutual mistake.   See de Monet v. PERA,
supra at 357.  As noted by the court in Williams:


The question of mutual mistake is determined
not by self-serving subjective statements of the parties= intent, which would necessitate trial to a
jury in all such cases, but rather solely by objective circumstances
surrounding execution of the release. 

 

                                                            *    *   
*

 








The doctrine of mutual
mistake must not routinely be available to avoid the results of an unhappy
bargain.  Parties should be able to rely
on the finality of freely bargained agreements.  However, in narrow circumstances a party may raise a fact issue
for the trier of fact to set aside a release under the doctrine of mutual
mistake.

 

Williams v. Glash, supra
at 264-65.  An error in predicting a
future fact known to be uncertain is not the kind of mistake which will relieve
a party from a contract.  See Green v.
Morris, 43 S.W.3d 604, 607  (Tex.App. B Waco 2001, no pet=n).  

Appellees
have responded to appellant=s claim for rescission by asserting the affirmative defenses of
ratification and waiver.  Ratification
occurs when a party recognizes the validity of a contract by acting under it,
performing under it, or affirmatively acknowledging it.  See Zieben v. Platt, 786 S.W.2d 797,
802  (Tex.App. B Houston [14th Dist.] 1990, no writ).  Ratification may either be express or
implied from a course of conduct.  Once
a party ratifies a contract, it may not later withdraw its ratification and
seek to avoid the contract.  See
Spellman v. American Universal Investment Company, 687 S.W.2d 27, 29 (Tex.App. B Corpus Christi 1984, writ ref=d n.r.e.). 
Any act inconsistent with an intent to avoid a contract has the effect
of ratifying the contract.  See Old
Republic Insurance Company, Inc. v. Fuller, 919 S.W.2d 726, 728 (Tex.App. B Texarkana 1996, writ den=d). 
Whether a party has ratified a contract may be determined as a matter of
law if the evidence is not controverted or is incontrovertible.  See Old Republic Insurance Company, Inc. v.
Fuller, supra at 728.             With respect to appellant=s mutual mistake of fact allegation, he
contends that the parties were mistaken as to Jackie Jay=s competency and its implication on her
ability to effectively consent to the settlement reached between appellant,
Ronald Jay, and appellees. Appellees assert that appellant ratified the
releases by continuing to seek the enforcement of the settlements reflected by
the execution of the release for almost three years after Jackie Jay filed her
original intervention.  Appellant
responds to appellees=
contention by arguing that he could not have ratified the releases until the
issues of Jackie Jay=s consent
and competency were resolved by the courts.  









It would
appear that most allegations of mutual mistake of fact involve objective
matters which can easily be confirmed or refuted.  The facts in this appeal are somewhat unique because questions
concerning a person=s
competency to give effective consent to a contract are matters of subjective
inquiry.  Despite the subjectivity of
the allegedly mistaken fact, we disagree with appellant=s position that he was entitled to wait
without consequence for a judicial determination of the alleged mistake.  The RESTATEMENT (SECOND) OF CONTRACTS ' 380(2) (1981) provides: 

The power of a party to avoid a contract for
mistake...is lost if after he knows or has reason to know of the
mistake... he manifests to the other party his intention to affirm it or acts
with respect to anything that he has received in a manner inconsistent with
disaffirmance.  (Emphasis added)  

 

We have not found any
Texas cases which have either adopted or rejected the application of Section
380(2) with respect to a party=s power to set aside a contract for mutual mistake.  In the absence of controlling authority to
the contrary, we adopt the Restatement=s standard of Aknows
or has reason to know.@  We therefore examine the summary judgment
evidence to determine if and when appellant knew or had reason to know that the
parties were mistaken with respect to Jackie Jay=s competency.  








Attorneys
for the parties took the deposition of William Bruce Jones, Ph.D., on February
27, 1998.  Dr. Jones is a
neuropsychologist who performed an evaluation of Jackie Jay in January of
1998.  He testified that his examination
of Jackie Jay indicated that the brain injuries which she suffered in the accident
resulted in severe cognitive impairment which precluded her ability to make
decisions of a legal nature.  The record
further indicates that the probate court for Grayson County appointed a
guardian for Jackie Jay in May of 1998 based upon the court=s finding of her incapacity by clear and
convincing evidence.[8]   As noted in Mobil Oil Corporation v. Floyd,
810 S.W.2d 321, 324 (Tex.App. B Beaumont 1991, orig. proceeding), the appointment of a guardian
creates a presumption of incompetency in other proceedings.   Dr. James T. Russell, M.D., advised the
probate court in the guardianship proceeding that Jackie Jay suffered a brain
injury as a result of the accident which resulted in severe incapacity as to
reasoning abilities, short-term memory, judgment, and resistance to undue
influences.   These matters demonstrate
that appellant had Areason
to know@ of the parties= alleged mistake regarding Jackie Jay=s competency in 1998. 
Appellant, however, did not attempt to set aside the releases until
March of 2000.  He remained in
possession of the funds which he had received by virtue of the settlements and
continued seeking to enforce the settlements during this period.  The record therefore conclusively
establishes that appellant ratified the releases by manifesting an intent to
affirm them long after he had reason to know of the parties= possible mistake.  

Appellant
also seeks to rescind the releases based on an allegation of fraud.  He contends that Jackie Jay and James
Michael Thompson (Ronald Jay=s attorney) fraudulently induced him to enter into the settlement
reflected by the releases by making false statements regarding Jackie Jay=s competency and consent to the settlement.[9]  The elements of common‑law fraud are:
(1) a material representation was made; (2) the representation was false; (3)
when the representation was made, the speaker knew it was false or made it
recklessly without any knowledge of the truth and as a positive assertion; (4)
the representation was made with the intention that it be acted upon by the
other party; (5) the party acted in reliance upon the representation; and (6)
the party suffered injury.   See Johnson
& Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 524
(Tex.1998).  As was the case with his
mutual mistake contentions, appellant asserts that he could not have ratified
the releases without a judicial determination of his fraud allegations against
Jackie Jay and Ronald Jay=s attorney.   Unlike the Aknows or has reason to know@ standard applicable to allegations of mutual
mistake, the Restatement provides that a party=s power to avoid a contract based on a fraudulent misrepresentation is
not lost until the party Aknows of the misrepresentation.@  Section 380(2).  We therefore review the summary judgment
evidence to determine if appellant manifested an intent to affirm the releases
after knowing of Jackie Jay=s and Thompson=s
purported fraudulent misrepresentations. 


Jackie Jay
was deposed on two occasions in December 1997 and January 1998.   She was questioned extensively during the
depositions about her and Thompson=s alleged fraud.  She stated
that Thompson advised her as follows with respect to the settlement proposed at
the April 3, 1997, hearing: 








I just remember [Thompson] telling me that it
was best for me to go along if the insurance...if the insurance asked if I was
going to sue, and he told me to say no and that, later on down the line, he
would try to get me some type of a B I don=t know what the word is called B compensation from [the accident].  

 

She
also answered in the affirmative to the following question:  

You=ll agree with me that if you got up there [at the April 3, 1997,
hearing] and you told us you understood, that you were doing all these things,
and, in fact, you knew that you didn=t understand but you were just giving us the answers that you thought
we wanted to hear, that you were being deceitful?  

 

Jackie Jay=s deposition testimony establishes that
appellant knew of Jackie Jay=s and Thompson=s
alleged misrepresentations in January 1998.  
Therefore, the record conclusively establishes that appellant ratified
the releases after knowing of Jackie Jay=s and Thompson=s
alleged misrepresentations for more than two years before seeking to set aside
the releases.

Appellant
asserts in Sub-issue No. 1c that the doctrine of quasi-estoppel bars appellees
from asserting the defense of ratification. 
Quasi‑estoppel precludes a party from asserting, to another's
disadvantage, a right inconsistent with a position previously taken.  See Lopez v. Munoz, Hockema & Reed,
L.L.P., 22 S.W.3d 857, 864 (Tex.2000). 
Appellant bases his quasi-estoppel argument on a letter written by
appellees= attorney in March 1998 to counsel for
appellant.  The letter outlined counsel=s assessment of the effect which Jackie Jay=s claims would have on the settlements
reached with appellant and Ronald Jay.  Appellant
contends that this letter had the effect of suspending his settlement with the
Roelkes pending a judicial determination of Jackie Jay=s claims.  
We disagree with appellant=s contention that the letter suspended his settlement with the
Roelkes.  The letter was written several
months after appellant had executed the releases and received all of the money
which he was entitled to receive under the settlements.   Additionally, the letter was written after
appellant had already ratified the releases.  Furthermore, we decline to hold that a letter written to opposing
counsel addressing the effect of another party=s claims on a pending dispute constitutes the Ataking of a position@ for quasi-estoppel purposes.  Moreover, even if one treats the letter as a
repudiation of the settlement by appellees, appellant=s ratification of the contract  prevented him from seeking to rescind the
contract.  See Griffith v. Porter, 817
S.W.2d 131, 145 (Tex.App. B Tyler 1991, no writ); Payne v. Baldock, supra at 509. 








Appellant=s Sub-issue No. 1d alleges deficiencies in
appellees= assertion of the defense of accord and
satisfaction.  The accord and
satisfaction defense rests upon a contract, express or implied, in which the
parties agree to the discharge of an existing obligation by means of a lesser
payment tendered and accepted.  See
Lopez v. Munoz, Hockema & Reed, L.L.P., supra at 863.  A few cases have specifically addressed the
defense of accord and satisfaction with respect to the settlement of tort
claims.  See Marsalis v. Garre, 391
S.W.2d 522 (Tex.Civ.App. B Amarillo 1965, writ ref=d n.r.e.).  Appellees asserted
the defense of accord and satisfaction in their motions for summary judgment in
addition to asserting release as a defense. 
The defense of release in the context of settling of a tort claim
involves the same elements as an accord and satisfaction in a contractual
setting.  Our resolution of appellees= defense of release is therefore applicable
to the assertion of the defense of accord and satisfaction.

Appellant
argues in Sub-issue No. 1e that appellees= summary judgment grounds of release and ratification do not defeat his
claims for conversion and breach of contract.  
Relying upon his global settlement allegation, he contends that the $5,500,000
which appellees paid to Jackie Jay in settlement of her claims should have been
paid to him.  Appellant advances this
argument even though some portion of this sum obviously compensated Jackie Jay
for claims not released in the releases which he executed, including the claim
for her own personal injuries and her claim against appellees regarding the
manner in which her claim was handled. 
Appellant=s conversion and breach of contract claims
are dependent upon his allegation that Jackie Jay was a party to the releases
which he executed.  Our rejection of
this allegation also defeats his conversion and breach of contract claims.  Appellant released all claims which he possessed
against the Roelkes in consideration for the sum of $500,000.   His receipt of this sum from appellees
conclusively establishes that they did not breach the terms of the release
agreements or convert any property to which appellant was entitled.

Appellant
argues in Sub-issue No. 1f that appellees= summary judgment grounds of release and ratification do not defeat his
claims of civil conspiracy and fraud which he has asserted against
appellees.  He contends that appellees
are liable for Jackie Jay=s fraud because they paid her money 








after having knowledge of
her allegedly fraudulent conduct. 
Appellant further alleges that appellees= representations as to the amount of insurance benefits available to
satisfy his claims became false when appellees paid additional amounts to
Jackie Jay.  Appellant=s civil conspiracy and fraud claims are also
dependent upon his allegation that Jackie Jay was a party to the releases he
executed.

Finally,
appellant argues in Sub-issue No. 1g that the releases do not release appellee
State Farm Fire & Casualty Company from liability.  The releases do not specifically identify
State Farm Fire & Casualty Company. 
However, the releases state that appellant released appellee State Farm
Mutual Automobile Insurance Company and each of its: 

[P]artnerships, corporations, or professional
associations with which [it has] been affiliated...as well as any and all
persons, firms, organizations, subsidiaries, affiliates, partners, predecessors
and successors in interest, assigns, or corporations in privity with [it].  

 

The record establishes
that State Farm Fire & Casualty Company is affiliated with State Farm
Mutual Automobile Insurance Company.  We
note in this regard that appellant has collectively referred to these two companies
as AState Farm@ throughout his pleadings and briefs. Appellant=s sole appellate issue and each of its
subparts are overruled.  

The
judgment of the trial court is affirmed. 


 

W. G.
ARNOT, III

CHIEF
JUSTICE

 

March 20, 2003

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











     [1]G. A. Stowers Furniture Co. v. American Indemnity Co.,
15 S.W.2d 544, 547-48 (Tex. Comm=n App. 1929,
holding approved)





     [2]The action remained
pending because appellant had not yet dismissed his claims in the action as of
July 9, 1997, even though he had received the remaining settlement proceeds
payable to him on July 2, 1997.  Karen
Coleman initially filed the suit as next friend of Jackie Jay.   The probate court subsequently named Jimi
Lou Coleman as Jackie Jay=s guardian on May 5, 1998,
whereupon Jimi Lou Coleman replaced Karen Coleman as Jackie Jay=s representative. 





     [3]See Trostle v. Trostle, 77 S.W.3d 908 (Tex.App. B Amarillo 2002, no pet=n),
for a recent discussion of the duty, if any, owed by one wrongful death
beneficiary to another wrongful death beneficiary with respect to instituting a
wrongful death action.





     [4]James Michael Thompson served as Ronald Jay=s attorney of record during the settlement negotiations
conducted with the Roelkes.  He also
represented Ronald Jay at the apportionment hearing.  Thompson died during the pendency of the underlying proceedings.





     [5]The settlement agreement which Jackie Jay executed
specifically identifies State Farm Mutual Automobile Insurance Company and
State Farm Fire & Casualty Company as released parties. 





     [6]Appellant additionally asserts in his argument under
Sub-issue No. 1a that he is entitled to seek the rescission of the releases on
the grounds of fraud and mutual mistake. 
We address these affirmative defenses in our discussion of Sub-issue No.
1b.





     [7]The releases designate Athe
Parties@ as appellant, Ronald Henry Roelke, and Elroy G.
Roelke. 





     [8]Ronald Jay filed a previous application for appointment
of guardian for Jackie Jay on December 12, 1995.  However, he subsequently withdrew the guardianship
application.  





     [9]Appellant does not assert that Thompson was a party to
the releases.   We have determined in
this appeal that Jackie Jay was not a party to the releases.   Some authorities suggest that a contract
cannot be set aside because of the fraud of a third person in which the other
party to the contract is not involved. 
See 14 TEX. JUR. 3D Contracts ' 86
(1997).  We do not reach the
applicability of this rule.