**ROBERTS EXPRESS, INC., Appellant,**

v.

**EXPERT TRANSPORTATION, INC., Appellee.**

No. 05–91–01446–CV.

Court of Appeals of Texas, Dallas.

Nov. 6, 1992.

Rehearing Denied Dec. 11, 1992.

Susan A. Minton, James A. Dunagan, P.C., Dallas, Tex., for appellant.

Bill Liebbe, Richardson, Tex., for appellee.

Before BAKER, KAPLAN and WIGGINS, JJ.

## OPINION

BAKER, Justice.

Roberts Express, Inc. sued Expert Transportation, Inc. on a sworn account to recover unpaid freight charges. Roberts contends the trial court improperly granted Expert's motion for judgment when Roberts rested its case. We agree. We reverse and remand for a new trial.

### THE SHIPMENTS

Expert contacted Roberts's White Glove Division to ship three shipments consisting of office furniture, computer parts, and towels. Roberts's White Glove Division is a special care and handling division. Roberts applies its tariff 414 when a shipper requests the services of its White Glove Division. Roberts's tariff 414 applies to "electronic equipment and automated machinery, i.e., computers and related office machinery, or industrial machinery guided by a computer programmable memory which requires care in handling for transportation."

Roberts billed Expert $12,422.91 for the three shipments Roberts handled for Expert. Roberts applied the rates under tariff 414 to arrive at this balance. Expert refused to pay this amount when Roberts demanded payment. Expert contended Roberts agreed to ship the commodities for $4,120. Expert offered to pay this amount in full satisfaction of the account. Roberts refused to accept that amount and sued Expert.

### THE PROCEDURAL HISTORY

#### A. Roberts's Petition

Roberts sued Expert on a sworn account for freight charges of $12,422.91. Roberts alleged Expert promised and agreed to pay the money that Roberts showed on its invoices. Roberts alleged the services were reasonably worth the money Roberts charged. Roberts also sued for attorney's fees, prejudgment and post judgment interest, and cost of suit. Roberts supported its petition with itemized invoices and its vice president's affidavit.

#### B. Expert's Answer

Expert answered by a verified denial. Expert specifically denied it promised and agreed to pay the charges Roberts alleged

were due. Expert specifically denied the services were reasonable. Expert alleged that Roberts had agreed to handle the three shipments for total charges of $4,120. Expert pleaded it notified Roberts of the alleged overcharge and offered to pay $4,120.[1]

## THE TRIAL

Roberts's evidence at trial showed Expert contacted Roberts's White Glove Division for three separate shipments. Expert requested the White Glove Division to ship office furniture, computer parts, and towels. The White Glove Division gave Expert's three shipments the Division's special care and handling services. Roberts billed Expert for the special care and handling under its filed tariff 414. This application of tariff 414 produced the total charges for which Roberts sued.

During Roberts's case in chief, the trial court admitted evidence of four separate tariffs Roberts used in billing its clients. These four tariffs included tariff 414. These four tariffs showed special and general commodity rates depending on the definition in the tariff.

The evidence showed Expert's three shipments were: (1) uncrated, upholstered executive chairs; (2) computer parts; and (3) toweling.

When Roberts rested its case, Expert moved for a judgment in its favor. The trial court found the rates Roberts charged unreasonable and tariff 414 inapplicable. The trial court rendered judgment that Roberts take nothing. The trial court also denied Roberts's motion for new trial.

## THE PARTIES' CONTENTIONS

### A. Roberts's Claims

In points of error one and two, Roberts contends the trial court erred in rendering the take-nothing judgment. Roberts argues as a matter of law it established an unrebutted prima facie case against Expert. Alternatively, Roberts contends the trial court erred in rendering the take-nothing judgment because the trial court's action was against the overwhelming weight and preponderance of the evidence. In support of these points of error, Roberts argues it showed its charges were proper under the "filed rate doctrine." Roberts argues the trial court had no jurisdiction to interpret Roberts's filed tariffs because of the "primary jurisdiction doctrine." Roberts argues that, if construction of the tariffs was a question of law, the trial court improperly construed the tariffs.

In point of error three, Roberts argues the trial court erred in refusing to allow it to introduce advertisements on its White Glove Division special services. In point of error four, Roberts argues that the court erred in refusing to permit Roberts to introduce evidence about its attorney's fees.

### B. Expert's Contentions

Expert argues that the trial court did not err in rendering the take-nothing judgment. Expert contends that as a matter of law Roberts did not show that tariff 414 or any other tariff applied to the shipments. Expert contends the judgment was proper because there was no evidence of a proper tariff applicable to the shipments.

Expert also contends there was no error in excluding Roberts's advertising evidence because that evidence was not relevant to any issue in the case. Finally, Expert argues the trial court did not abuse its discretion in refusing to admit testimony by Roberts's attorney because Roberts did not show good cause for its failure to disclose its attorney expert witness on a timely basis.

## THE APPLICABLE LAW

### A. The Standard of Review

■ In a nonjury trial, the trial judge determines both the factual issues and the application of the law to those facts. Under these circumstances, the proper procedure is to permit the trial judge, at the

---

**1.** The record shows that Expert did not tender $4,120 to Roberts before suit, nor did Expert tender $4,120 into court after Roberts filed suit.

close of the plaintiff's case, to rule on both the factual and legal issues. The court may make factual findings at that time if requested by a party. *Qantel Business Sys. v. Custom Controls*, 761 S.W.2d 302, 304 (Tex.1988); *Moore v. Office of Atty. Gen.*, 820 S.W.2d 874, 876 (Tex.App.—Austin 1991). We presume the trial judge ruled on the sufficiency of the evidence. *Qantel*, 761 S.W.2d at 305; *Moore*, 820 S.W.2d at 876.

To sustain Roberts's attack on the trial court's action in granting the take-nothing judgment, we must conclude the trial court's conclusions are so contrary to the overwhelming weight of all relevant evidence that it was clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). As the trier of fact, the trial court is the sole judge of the witnesses' credibility and the weight given their testimony. *Tate v. Commodore County Mut. Ins. Co.*, 767 S.W.2d 219, 224 (Tex. App.—Dallas 1989, writ denied). The trial court draws inferences from the evidence and chooses between conflicting inferences. *See Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex.1973). The trial judge may accept or reject any witness's testimony in whole or in part. While a reviewing court may not have reached the same conclusions, we may not substitute our judgment for that of the trial court. *Forscan Corp. v. Dresser Indus., Inc.*, 789 S.W.2d 389, 394 (Tex. App.—Houston [14th Dist.] 1990, writ denied).

### B. Robert's Prima Facie Case

Roberts sued Expert on a sworn account. Because Expert filed a verified denial of Roberts's petition, Roberts was put to proof of its claim without the aid of the presumption from rule 185. *See* Tex. R.Civ.P. 185; *Thorp v. Adair & Myers*, 809 S.W.2d 306, 307 (Tex.App.—Houston [14th Dist.] 1991, no writ). The elements of proof in a sworn account are the performance of services and that the amount of the account is "just," which means the prices charged are agreed to or that the charges are usual, customary, or reasonable. *Thorp*, 809 S.W.2d at 307. Roberts

alleged the prices charged were reasonable. For Roberts to sustain its claim that it established a prima facie case, the record must contain evidence of reasonable freight charges.

### C. The Filed Rate Doctrine

The filed rate doctrine provides:

A carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under Chapter 105 of this title shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.

*See* 49 U.S.C. Ann., § 10761(a) (1982 Ed.).

It is a matter of federal law that the filed rate alone governs the legal rights of a shipper against a carrier. The statute forbids equitable defenses to collection of the filed tariff. This includes the shipper's ignorance or the carrier's misquotation of rates. *See Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 117–18, 110 S.Ct. 2759, 2761, 111 L.Ed.2d 94 (1990).

However, where more than one rate classification applies to a commodity, the tariff that applies to the materials specifically described will control to the exclusion of a general tariff rate applicable to a large class of similar commodities. *See United States v. Gulf Refining Co.*, 268 U.S. 542, 546, 45 S.Ct. 597, 599, 69 L.Ed. 1082 (1925).

Because a carrier must strictly follow its published tariffs, the carrier may apply a commodity rate only if the product shipped fits the description in the tariff schedule exactly. If there is no commodity rate, the applicable class rate then applies. *See Roach Appleton Mfg. Co. v. United States*, 265 F.Supp. 568, 570 (N.D.Ill.1967).

If there is no applicable class rate, the nearest similar class rate applies under a "rule of analogy." The rule of analogy does not apply to specific commodity descriptions. *See Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 682 (9th Cir.1985).

 Where two descriptions and tariffs are equally appropriate, the tariff specifying the lower rate applies. *See Gulf Refining Co.*, 268 U.S. at 546, 45 S.Ct. at 599.

### D. The Primary Jurisdiction Doctrine

 Tariffs filed with the ICC are binding contracts between the carrier and the shipper. *See Great Northern Ry. Co. v. Merchants' Elevator Co.*, 259 U.S. 285, 291, 42 S.Ct. 477, 479, 66 L.Ed. 943 (1922); *Coca Cola Co. v. Atchison, T. & S.F. Ry. Co.*, 608 F.2d 213, 219 (5th Cir.1979). Filed tariffs have the force of law. We treat them with the same import as statutes. *Coca Cola Co.*, 608 F.2d at 219. The task of interpretation of tariffs filed with the ICC is the same as statutory interpretation. Like statutory interpretations, tariff interpretations involve mainly questions of law. *Coca Cola Co.*, 608 F.2d at 219.

 The basic question is whether tariff construction involves a question of fact or of law. Whenever a shipper attacks a rate, rule, or practice as unreasonable or as unjustly discriminatory, there must be preliminary resort to the ICC for a factual determination. *See Great Northern Ry. Co.*, 259 U.S. at 291, 42 S.Ct. at 479. Under this doctrine, the courts defer action pending the appropriate administrative agency's ruling. *Coca Cola Co.*, 608 F.2d at 215 n. 1. What rate, rule, or practice is reasonable for the future is a legislative or administrative function. To determine whether a carrier wronged a shipper in the past by charging an unreasonable or discriminatory rate is a judicial function. *Great Northern Ry. Co.*, 259 U.S. at 291, 42 S.Ct. at 479.

 The courts require resort to the commission in both classes of cases. *See Great Northern Ry. Co.*, 259 U.S. at 291, 42 S.Ct. at 479. Resort to the ICC is necessary if there is a contention the tariff does not use words "in their ordinary meaning" or if there is a factor of reasonableness involved in the construction of a tariff by considering the underlying cost allocation involved in establishing the tariff. *See Great Northern Ry. Co.*, 259 U.S. at 291–92, 42 S.Ct. at 479; *Coca Cola Co.*, 608 F.2d at 220.

However, if the issue does not involve the interpretation of technical words or phrases not commonly understood or there is no need to determine the impact of underlying cost allocation matters, then the matter is a pure question of law for the court's determination. *See United States v. Western Pacific R.R.*, 352 U.S. 59, 69, 77 S.Ct. 161, 167–68, 1 L.Ed.2d 126 (1956); *Coca Cola Co.*, 608 F.2d at 220.

### E. Tariff 414

Roberts's filed tariff 414 states it establishes "local mileage commodity rates via all motor routes applying on electronic equipment and automated machinery between points in the United States (except AK and HI)."

Item 30 of tariff 414 states:

(a) the rates and provisions of this tariff apply on electronic equipment and automated machinery, i.e., computers and related office machinery or industrial machinery guided by computer programmable memory which requires care in handling for transportation;

(b) the rates and provisions of this tariff will only apply when the specialized handling service offered by the 'White Glove Division' of Roberts Express, Inc. is requested and furnished.

### APPLICATION OF THE LAW TO THE EVIDENCE

#### A. The Primary Jurisdiction Doctrine

 Roberts argues that the primary jurisdiction doctrine applies in this case. Roberts contends the purpose behind its tariff 414 is the special handling it provides for the defined shipments. Roberts contends it is not possible to separate construction of the tariff from the reasonableness of the tariff. Roberts concludes the

ICC is the only forum which could review the matters. Roberts also argues that Expert may not abate the case for referral to the ICC since Roberts may seek its charges in the interim. *See In re Caravan Refrigerated Cargo, Inc.*, 864 F.2d 388, 391–92 (5th Cir.1989), *cert. denied*, 497 U.S. 1010, 110 S.Ct. 3254, 111 L.Ed.2d 763 (1990). Additionally, Roberts asserts that Expert waived any referral to the ICC because Expert did not ask for that relief.

Expert argues that there is no necessity to refer this matter to the ICC because there is no issue of fact for interpretation. Expert contends the situation is one of a question of law. We agree.

In our view, the words in the tariff are words used in their ordinary meaning. Also, though Expert claimed the tariff was unreasonable, we see no need for a determination by the ICC of any underlying cost-allocation considerations. *See Coca Cola Co.*, 608 F.2d at 220.

### B. The Filed Rate Doctrine

Roberts argues that under the filed rate doctrine the trial court is bound to apply its tariff 414. Roberts contends the tariff 414 charges are the only lawful charges. Roberts argues we must presume them reasonable. *See* 49 U.S.C. § 10761(a) (1982 Ed.); *Maislin Indus.*, 497 U.S. at 118–19, 110 S.Ct. at 2762.

Expert contends that Roberts had the burden of showing an applicable tariff to establish the correctness of the amounts Roberts sought from Expert. Expert contends Roberts relied solely on its tariff 414 as the applicable tariff. Expert argues that under the plain words of Roberts's tariff 414, it does not apply to the items Expert shipped. Therefore, Expert contends it is unreasonable and that since Roberts chose to rely on tariff 414 exclusively, Roberts has not carried its burden.

■ Both Roberts and Expert ignore the corollaries to the filed rate doctrine. Because a carrier must follow strictly its published tariffs, we may apply a commodity rate only if the product shipped fits the description in the tariff schedule exactly. *See Barnes*, 759 F.2d at 682; 49 U.S.C. § 11916 (1982). If there is no commodity rate, then an applicable class rate applies. *Barnes*, 759 F.2d at 682.

■ Ordinarily, where a commodity shipped is included in more than one tariff designation, that which is more specific will apply. *See Gulf Refining Co.*, 268 U.S. at 546, 45 S.Ct. at 599. Where two descriptions and tariffs are equally appropriate, the tariff specifying the lower rate applies. *Gulf Refining Co.*, 268 U.S. at 546, 45 S.Ct. at 599.

■ The record in this case shows Roberts filed about at least four different tariffs. We conclude there is evidence permitting the trial court to apply the rule that where there is more than one appropriate tariff, the tariff specifying the lower rate applies. The trial court did not do so. In failing to do so, the trial court abused its discretion. We hold the trial court erred by granting Expert's motion for a directed verdict. We sustain Roberts's second point of error.

Because our action on Roberts's second point is dispositive of this appeal, it is not necessary to discuss Roberts's other points of error.

We reverse and remand this cause for further proceedings consistent with this opinion.