Motion for Rehearing Overruled; Affirmed; Memorandum Opinion of October
13, 2005, Withdrawn; and Substitute Majority and Concurring Opinions on
Rehearing filed October 19, 2006








 

Motion
for Rehearing Overruled; Affirmed; Memorandum Opinion of
October 13, 2005, Withdrawn; and Substitute Majority and Concurring
Opinions on Rehearing filed October 19, 2006.

 

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01287-CV

____________

 

HONG HUANG, LATONIA CALAMEASE,
ISAAK GOLBRAYKH, 

ZHI YUAN LIU, JUAN RAMON MEJIA, LIE
KAI PON, YAN FEN XIAN, GUOYUE YU, JING YAN ZHOU, CHI-CHIH TSAI, JIAN-FENG LI, and 

CHIU K. LEE, Appellants

 

V.

 

DON McGILL TOYOTA, INC., Appellee

 



 

On Appeal from the 11th
District Court

Harris County, Texas

Trial Court Cause No. 02-17946

 



 

S U B S T I T U T E   M A J O R I T
Y   O P I N I O N

O N  R E H E A R I N G

 

Appellants= motion for
rehearing is overruled.  We withdraw the opinion of October 13, 2005 and issue
this substitute majority opinion on rehearing.  








Hong Huang, Latonia Calamease[1],
Isaak Golbraykh, Zhi Yuan Liu, Juan Ramon Mejia, Lie Kai Pon, Yan Fen Xian,
Guoyue Yu, Jing Yan Zhou, Chi-Chih Tsa, Jian-Feng Li, and Chiu K. Lee appeal a
take nothing judgment in favor of Don McGill Toyota.  In four issues,
appellants contend (1) they presented sufficient evidence of fraud, deceptive
trade practices, and damages, and (2) the evidence is legally and factually
insufficient to show Golbraykh and Mejia=s claims are
barred by accord and satisfaction.  We affirm.

I.  Factual and Procedural Background

Lured by an advertisement for zero percent interest, each
of the appellants, except Latonia Calamease, went to Don McGill Toyota seeking
to purchase a vehicle.  Each appellant negotiated with a salesperson through a
translator, if necessary, and signed lease documents for a Toyota vehicle. 
Appellants testified at trial that they intended to purchase a vehicle and were
led to believe they were purchasing a vehicle.  When appellants discovered the
agreements they signed were lease agreements as opposed to purchase agreements,
they went back to Don McGill Toyota and complained.  Some appellants testified
they were told they had purchased the vehicle, but the lease agreement was
necessary to obtain zero percent interest.  One appellant, Isaak Golbraykh,
returned to Don McGill Toyota, rescinded his lease agreement, and entered into
a purchase agreement.  Another appellant, Juan Ramon Mejia, returned the used
vehicle he originally leased and entered into another lease agreement for a new
vehicle.  All appellants testified that they were still in possession of the
vehicles leased or purchased from Don McGill Toyota.








Appellants filed suit against Don McGill Toyota alleging,
among other things, fraud in the inducement, and violations of the Texas
Deceptive Trade Practices Act (DTPA).  See Tex. Bus. & Com. Code Ann. ' 17.01 et. seq. 
Appellants sought damages for out-of-pocket expenses, including, but not
limited to, cash payment, cost of insurance, attorney=s fees, and loss
of benefit of the bargain.  Trial was to the court.  At the conclusion of
appellants= evidence, appellee moved for what was improperly
denominated as an Ainstructed@ verdict.  The
trial judge granted the motion and entered a take-nothing judgment.  

II.  Liability and Damages

In their first issue, appellants contend the trial court
erred in entering judgment for appellee because there was sufficient evidence
to support a finding of fraud and/or violations of the DTPA.  In their second
issue, appellants contend they presented sufficient evidence of damages.  

A.      Standard
of Review

Ordinarily, in reviewing the grant of a motion for
judgment, we must decide whether there is any evidence of probative value
sufficient to raise an issue of fact on the material questions presented.  In
this case, however, by entering judgment at the close of appellants= case-in-chief,
the trial court, acting as fact finder, is presumed to have ruled not only on
the sufficiency but also on the weight of the evidence and credibility of the
witnesses.  Qantel Bus. Sys., Inc. v. Custom Controls Co., 761 S.W.2d
302, 303B05 (Tex. 1988); Martin-Simon
v. Womack, 68 S.W.3d 793, 796 (Tex. App.CHouston [14th
Dist.] 2001, pet. denied). Thus, after granting a motion for judgment, the
trial judge may properly make findings of fact as well as conclusions of law.  See
Qantel, 761 S.W.2d at 304.  Findings of fact in a bench trial have the same
force and dignity as a jury verdict; we review them for legal and factual
sufficiency under the same standards we apply in reviewing a jury=s findings.  See
Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  On appeal from the trial
court=s judgment in a
non-jury trial, the legal and factual sufficiency of the evidence to support
the judgment may be challenged as in any other case.  Roberts Express, Inc.
v. Expert Transp., Inc., 842 S.W.2d 766, 769B70 (Tex. App.CDallas 1992, no
writ).

 








When a party attacks the legal sufficiency of an adverse
finding on which he had the burden of proof, he must demonstrate on appeal that
the evidence establishes, as a matter of law, all vital facts in support of his
proposed disposition.  Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241
(Tex. 2001).  We review the evidence in the light most favorable to the
challenged finding and indulge every reasonable inference that would support
it.  City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex. 2005).  When a
party attacks the trial court=s adverse finding for factual
insufficiency, he must demonstrate on appeal that the finding is against the
great weight and preponderance of the evidence.  Dow Chem. Co., 46
S.W.3d at 241.  We must consider and weigh all of the evidence, and can set
aside a verdict only if the evidence is so weak or if the finding is so against
the great weight and preponderance of the evidence that it is clearly wrong and
unjust.  Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986), overruled
on other grounds, Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388
(Tex. 2000).  

B.      Findings
of Fact

The trial court rendered 208 findings of fact.  The
following findings significantly impact our disposition of legal and factual
sufficiency issues:

5. The lease agreements of the Plaintiffs fully detailed the payments,
charges, costs and expenses for each of the respective vehicles acquired by the
Plaintiffs.

6. The Plaintiffs have incurred no expenses or charges for claims
asserted in this lawsuit besides those required in their respective leases.

7.  Each of the Plaintiffs separately negotiated for their respective
vehicles with the prices and payments that were embodied in their respective
lease agreements.

8. The Plaintiffs that did not speak or read English brought
translators of their own choosing to McGill to negotiate on behalf of such
Plaintiffs.

10. After Isaak Golbraykh complained of his lease agreement, this
Plaintiff negotiated a purchase agreement with McGill for his vehicle.

12. Juan Ramon Mejia renegotiated a
second lease transaction after his initial lease transaction with McGill.                    








21. The terms that the Plaintiffs or their respective translators
negotiated were incorporated into their respective lease agreements.  

108. In order to accommodate and resolve the complaint that Golbraykh
made about his lease, McGill and Golbraykh entered into a retail sale contract
with McGill paying Golbraykh=s lease obligations.

110. Golbraykh understood that by signing the retail sale contract
labeled as Defendant=s Exhibit No. 12, that Golbraykh
was obligated to pay the total sales price and the payments set forth in that
document.

 

C.      Conclusions
of Law

The following conclusions of law are relevant to our
disposition:

213. The Plaintiffs failed to rescind their
transactions with McGill.

214. The Plaintiffs= claims for damages should be denied.

215. The Plaintiffs= claims for relief predicated upon Deceptive Trade Practices Consumer
Protection Act violations should be denied.

216. The Plaintiffs= fraud claims should be denied.

217. The claims and causes of action asserted by the Plaintiffs against
McGill should be dismissed and denied in their entirety.

218. All relief sought by the Plaintiffs should be
denied.

 

D.      Analysis

Without citation to authority, appellants contend their
burden is to show there is some evidence in the record to support reversal of
the trial court=s judgment.  However, we are required to
review the trial court=s judgment and this record consistent with
the standards articulated in Cantalina, 881 S.W.2d at 297 and Qantel,
761 S.W.2d at 303B05.  Moreover, we must consider and
give proper weight to the trial court=s findings of
fact.  We acknowledge that findings of fact in a case tried to the court have
the same force and dignity as a jury=s verdict;
however, when a complete reporter=s record is filed,
findings of fact are not conclusive.  Middleton v. Kawasaki Steel Co.,
687 S.W.2d 42, 44 (Tex. App.CHouston [14th Dist.] 1985, writ ref=d n.r.e.). 













Appellants suggest we should disregard the liability issues
because of the trial court=s oral pronouncement that his instructed
verdict was based on insufficient evidence to calculate damages.  On the
contrary, we cannot consider comments made by the judge at the conclusion of a
bench trial as a substitute for findings of fact and conclusions of law. See 
In re W.E.R., 669 S.W.2d 716, 716 (Tex. 1984); Rutledge v. Staner, 9
S.W. 3d 469, 470 (Tex. App.CTyler 1999, pet. denied).  We acknowledge
the testimony of each appellant supporting their allegations that appellee=s representatives
misrepresented contents of the lease documents.  We also consider their
assertions that they were rushed through the lease signing process.  We note
that the subject leases are on forms printed for or on behalf of Toyota Motor
Credit Corporation and Bank One Auto Leasing Corporation. The word Alease@ is found in
almost every paragraph or under every caption.  The following notice to the
lessee or co-lessee appears just above appellants= signature line in
the Toyota Motor Credit Corporation form:  AThis is a lease;
you have no ownership interest in the vehicle unless and until you exercise
your option to purchase set forth in this lease.@   Similarly, the
following language appears just above the signature line in the Bank One lease:
ATHIS IS A LEASE
AGREEMENT.  THIS IS NOT A PURCHASE AGREEMENT.  PLEASE REVIEW THESE MATTERS
CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS
CONCERNING THIS TRANSACTION . . . .@  During
cross-examination, several appellants were impeached relative to the contention
that they could not speak or understand English.  Moreover, before appellants
rested their case, the trial judge heard evidence about appellants= law firm paying
$7,000 to appellee=s former salesman, Joe Martinez.  This record
indicates the trial judge had reasonable basis to doubt appellants= credibility. 
Findings of Fact numbered 5, 6, 7, 8 and 21 are indicative of the trial court=s belief that
appellants or their interpreters understood and assented to the terms and
conditions in their respective lease documents.  These findings support the
trial court=s conclusions of law numbered 215, 216, 217 and 218. 
Again, we must consider all the evidence in a light favorable to challenged
findings and indulge in every inference favorable to the court=s judgment. 
Accordingly, we hold findings of fact numbered 5, 6, 7, 8 and  21 are
sustainable and support conclusions of law numbered 215, 216, 217 and 218.  

Appellants= first issue is overruled. 

To recover either under the DTPA, or for fraud in the
inducement, appellants must prove they sustained damages as a result of their
reliance on misrepresentations by Don McGill=s agents or
representatives.  See Tex. Bus.
& Com. Code Ann. ' 17.50(b)(1) (Vernon 2005); Formosa
Plastics Corp. USA v. Presidio Engrs. & Contractors, Inc., 960 S.W.2d
41, 47 (Tex. 1998). While the DTPA does not define Aactual damages,@ the term has been
construed to mean common law damages.  W.O. Bankston Nissan, Inc. v. Walters,
754 S.W.2d 127, 128 (Tex. 1988).  The common law affords two measures of
damages for fraudulent misrepresentation: (1) the out‑of‑pocket
measure, which is the difference between the value of that which was parted
with and the value of that which was received, and (2) the benefit‑of‑the‑bargain
measure, which is the difference between the value represented and the value
actually received.  Formosa Plastics, 960 S.W.2d at 49.  A plaintiff may
recover either the out‑of‑pocket or the benefit‑of‑the‑bargain
damages, whichever is greater.  Arthur Andersen & Co. v. Perry Equip.
Corp., 945 S.W.2d 812, 817 (Tex. 1997).








Appellants contend they elicited evidence sufficient to
support the benefit-of-the-bargain measure of damages.  Appellants suggest
their damages should be calculated by subtracting what they assert to be the
purchase price from the total costs which will be incurred if they exercise the
option to purchase for the amounts expressed in their leases.  In support of
their proposed damage calculation, appellants refer this court to George
Pharis Chevrolet, Inc. v. Polk, 661 S.W.2d 314, 315 (Tex. App.CHouston [1st
Dist.] 1983, no writ); Mack v. Bradford, 359 S.W.2d 941, 943B44 (Tex. App.CEl Paso 1962, writ
dism=d); and City
Lincoln Mercury v. Ybarra, 308 S.W.2d 67, 69 (Tex. App.CDallas 1957, writ
dism=d). However, none
of these cases involve misrepresentations to plaintiffs that they were
purchasing rather than leasing an automobile.  The salesmen in each of these
cases allegedly  represented the purchase price of a vehicle to be a certain
amount, then wrote a higher figure in the sales agreement.  There was no claim
that they were misrepresenting the type of transaction and circumstances under
which the plaintiffs would possess the automobiles.  The plaintiffs sought to
recover the difference between what was orally represented to be the purchase
price and the amount they were required to remit under the subsequent written
purchase agreement.  This calculation of damages is patently not the difference
between the value represented and the value received.  See City Lincoln
Mercury, 308 S.W.2d at 69.          Here, appellants complain that they
were fraudulently induced to sign leases.  They contend the salesmen told them
they were purchasing, not leasing, the vehicles.  Unlike the plaintiffs in the
above cited cases, appellants did not purchase the vehicles for a higher amount
of money than previously represented.  Appellants fail to recognize that they
have no contractual obligation to purchase the vehicles.  Consequently,
appellants= damages are not determinable by subtracting the lease
costs from the total cost to purchase the vehicles if they exercise their options
under the agreements.  Under these facts, the value represented  is
ownership of the automobile for a sum certain amortized (without interest) over
the period of time expressed in the lease.  Obviously, under the purchase
paradigm, each appellant had the potential of equitable interest in the
automobile after tendering the sum alleged to be the purchase price.  Because
appellants were not obligated to purchase the leased vehicles, the value
received was use of the vehicles for the amounts expressed in the
agreements over the same alleged amortization period, without residual equity. 
When a defendant misrepresents the type or quality of the product or service
which is the subject of the transaction, an essential part of plaintiff=s proof is the
fair market value of what was represented versus the market value of what was
actually received.  W.O. Bankston Nissan, Inc., 754 S.W.2d at 128.   Appellants
failed to present any evidence regarding the fair market value of the
automobiles or fair market value of the leases.  Without evidence sufficient to
establish the amount of equity appellants might have realized if they had
purchased the vehicles for the represented amounts, the trial court could not
calculate the difference between value represented and value received.  In
their motion for new trial, appellants acknowledged that they failed to present
the above evidence.  Accordingly, we overrule appellants second issue. 








III.  Accord and Satisfaction

In their third and fourth issues, appellants contend the
evidence was legally and factually insufficient to support the trial court=s finding that
Isaak Golbraykh=s and Juan Mejia=s claims were
barred by accord and satisfaction.  When Golbraykh first discovered he had
mistakenly leased a vehicle from appellee,  he returned to the dealership and
executed a sales agreement for the same vehicle.  Several weeks after Mejia
leased a used vehicle from Don McGill Toyota, a salesperson from the dealership
called him and told him he could lease a new vehicle for the same monthly
payment as the used vehicle.  Mejia returned the first vehicle to Don McGill Toyota
and executed a second lease agreement.  In its conclusions of law, the trial
court found Golbraykh=s and Mejia=s claims were
barred by accord and satisfaction.

The defense of accord and satisfaction rests on a contract
in which the parties agree to the discharge of an existing obligation by means
of a subsequent payment tendered and accepted.  Lopez v. Munoz, Hockema
& Reed, L.L.P., 22 S.W.3d 857, 865 (Tex. 2000).  Appellee contended at
trial that by executing a second agreement, Golbraykh and Mejia satisfied their
dispute with the dealership.  For the accord and satisfaction defense to
prevail, there must be evidence that there was a dispute between the parties
and they specifically and intentionally agreed to discharge the party=s obligations.  Id. 


With regard to Golbraykh, we find appellee met that
burden.  When Golbraykh discovered he had signed a lease agreement, he was
dissatisfied and returned to the dealership to execute a sales agreement. 
Therefore, Golbraykh=s execution of the sales agreement
constituted an accord, which was satisfied when appellee paid off the lease
agreement prior to execution of the sales agreement.  By rescinding the agreement,
Golbraykh intentionally released Don McGill from its obligation to lease the
vehicle to him.  Don McGill, on the other hand, intentionally released
Golbraykh from his obligation to make lease payments.  Accordingly, we
sustain the trial court=s findings of fact numbered 108 and 110.  








With regard to Mejia, appellee has not proved the defense
of accord and satisfaction.  When Mejia returned the first vehicle, he executed
another lease agreement on a second vehicle.  Mejia claimed at trial he was
duped into executing a lease agreement in both transactions.  Therefore, the
second agreement did not constitute an accord and satisfaction. However,
failure of Mejia=s accord and satisfaction defense does not
require reversal of the trial court=s judgment. 
Because neither Golbraykh, nor Mejia, produced evidence sufficient to calculate
damages, the trial court did not err in entering the take nothing judgment. 
Appellants= third and fourth issues are overruled.

The judgment of the trial court is affirmed.

 

 

 

/s/      Charles W. Seymore

Justice

 

Judgment rendered and Substitute
Majority and Concurring Opinions on Rehearing filed October 19, 2006.

Panel
consists of Justices Edelman, Seymore, and Guzman.  (Edelman, J., concurring.)

 









[1]  Latonia Calamease filed a separate notice of appeal,
but her name does not appear on appellant=s
brief.  Because no brief was filed on her behalf, her appeal is dismissed for
want of prosecution.  See Tex. R.
App. P. 42.3(b).